IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No: 05 C 5725 |
| CARL E. SMITH PETROLEUM, INC., a West Virginia corporation, | ) ) ) | Judge Milton I. Shadur |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Central States, Southeast and Southwest Areas Pension Fund and its Trustee Howard McDougall (who after this sentence are collectively referred to as "Fund," treated as a singular noun) have sued Carl E. Smith Petroleum, Inc. ("Smith Petroleum") to impose withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("Act").[1] With this Court having issued a preliminary injunction at Fund's instance earlier in the litigation, Fund has now filed a FED R. CIV. P. ("Rule") 56 motion for summary judgment together with supporting materials, and Smith Petroleum has responded with its own memorandum and supporting materials.

As it often does in such situations, this Court had not called upon Fund to file reply materials in the first instance. Instead it scheduled a status hearing to be held shortly after receipt

---

[1] All citations to provisions of the Act will take the form "Act § --," employing the numbering in Title 29 rather than the Act's internal section numbering.

of Smith Petroleum's response, so that the need (or lack of need) for such a reply could be discussed. At that April 27, 2006 hearing this Court did request such a reply as to a limited subject area that appeared to call for one. But since then this Court has looked at the issues more closely, has done some of its own work on the matter and finds that the Rule 56 motion is capable of resolution without any such further input.

Because the parties' submissions have gone beyond Fund's straightforward request for relief under Rule 56 (a subject that this Court will speak to later), and to avoid any mischaracterization of that straightforward request, this opinion has attached a copy of page 3 of Fund's motion as Ex. 1. For the reasons stated in this memorandum opinion and order, the relief sought there is clearly appropriate, and Fund's motion is accordingly granted.

It is undisputed by the parties that the September 23, 2003 Chapter 11 bankruptcy filing by Smith Petroleum's parent corporation Carl E. Smith, Inc. ("Smith")[2] has triggered the operation of the Act. Nor is there any question that Smith Petroleum, which is a solvent corporation not in bankruptcy, has thereby been rendered severally liable for withdrawal liability pursuant to the Act. Indeed, under the operative standards of this District Court's L.R. 56.1, adopted to implement Rule 56 by identifying the presence or absence of genuine issues of material fact, Smith Petroleum has not challenged Fund's quantification of that withdrawal liability in the principal sum of $95,510.22.[3]

---

[2]That bankruptcy proceeding is Case No. 03-22274 in the Southern District of West Virginia.

[3]In response to Paragraph 15 of Fund's L.R. 56.1(b)(3) statement as to the amount of such liability, appropriately supported by affidavit, Smith Petroleum has voiced a denial – but to that end it refers only to Bankruptcy Judge Ronald Pearson's April 16, 2006 opinion in the Smith
(continued...)

Those things together suffice to saddle Smith Petroleum with the Act-imposed obligation to make the installment payments that Fund called for in its August 17, 2005 notice and demand for payment, and that this Court ordered in the preliminary injunction referred to earlier: monthly installments of $3,033.80 each until the principal amount and interest are fully paid. That "pay now, dispute later" concept is established by virtually innumerable cases decided over the years, many of them brought by Fund – just to choose a couple of examples, see its actions against Lady Baltimore Foods, 960 F.2d 1339, 1341, 1347 (7th Cir. 1992) and against Wintz Props., Inc., 155 F.3d 868, 871-72 (7th Cir. 1998).

Here Smith Petroleum's resistance to that obligation is based on a mischaracterization and misconception of both the actions taken in Smith's bankruptcy proceedings and the effect of those actions. Little discussion and analysis are needed to demonstrate that.

On November 26, 2003 the Bankruptcy Court entered an order that read in relevant part (emphasis added):

> 2. That the Debtor, Carl E. Smith, Inc. ("CESI"), shall cause the <u>net profits</u> of Carl E. Smith Petroleum Inc. ("CESP"), a subsidiary corporation of the Debtor which is not itself a Debtor in a bankruptcy proceeding, to be transferred to CESI.
>
> 3. Pursuant to Bankruptcy Code, §§ 361 and 362, in order to provide the Bank [Ohio Valley Bank] with adequate protection, the Bank is hereby granted a security interest and lien, up to the amount of the value of the Bank's cash collateral as it existed on the Petition date, in all of the <u>Debtor's</u> cash accounts

---

$^{3}$(...continued)
bankruptcy proceeding – an opinion that has sustained Smith's objection to Fund's proof of claim based on the claimed applicability of the building and construction industry exception to withdrawal liability under Act § 1383(b). Even apart from the fact that the Bankruptcy Judge's decision (which is not yet a final and non-appealable determination) was rendered as between Fund and Smith rather than as between Fund and Smith Petroleum, a distinction that may or may not carry legal significance (a matter for possible consideration at a later date), the decision does <u>not</u> pose any challenge to Fund's verified quantification of the withdrawal liability if it exists.

receivables and <u>other cash collateral arising post-petition, including sums transferred from CESP</u> . . . .

That order, which dealt with the subject of cash collateral available to debtor Smith, was obviously – and simply – one that required the ongoing payment of dividends from its subsidiary Smith Petroleum in the amount of all of the latter's <u>net profits</u>. It did not even purport to touch Smith Petroleum's other assets or to impinge on the corporate integrity of Smith Petroleum, which was not itself in bankruptcy and was not within the jurisdiction of the Bankruptcy Court.

Whether by reason of inadequate analysis or otherwise, Smith Petroleum's counsel has materially mischaracterized the resulting situation. Its Mem. 3 says:

> Since November 26, 2003, therefore, Petroleum has not been free to make any payments, other than ordinary business expenses, to creditors. In addition to Ohio Valley Bank's lien on its net profits, all of its activities have been subject to the approval of the Bankruptcy Court.

Not so – all of Smith Petroleum's assets, except for the cash sent upstream as "net profits," have remained fully available, without any need for Bankruptcy Court approval, as the source of payment of Smith Petroleum's withdrawal liability under the Act.

In like fashion, Smith Petroleum's Mem. 4 (emphasis added) also flat-out misstates the facts:

> Ignoring the status of the Bankruptcy Case <u>and the restrictions imposed upon Petroleum</u>, rather than raise the issue with the Bankruptcy Court, which was familiar with the matter and Petroleum's money, the Fund chose to forum shop and pursue its claim against Petroleum in its own backyard.

As already stated, there were no such restrictions imposed by the Bankruptcy Court on Smith Petroleum itself (nor could there have been), and Fund's proper pursuit of its claim under the Act before this Court cannot be twisted into forum shopping. And the beat goes on – here is the

4

Mem. 4-5 distortion of the situation to the same effect, in speaking of Fund counsel's appearance before this Court at the time noticed up for the preliminary injunction hearing (again emphasis has been added):

> Absent from the Fund's preliminary injunction pleadings was any notice to this Court that <u>Petroleum was subject to the Bankruptcy Court</u>, that it was required to transfer all net profits to Smith or <u>that it could not make any payments to third parties without Bankruptcy Court approval</u> .... The Fund's counsel never mentioned the Bankruptcy Order restricting Petroleum's actions, <u>the fact that counsel for Petroleum could not do anything without approval from the Creditor's Committee</u> or that counsel for Petroleum did not have an opportunity to even locate an attorney licensed to practice in Illinois.

Each of the underscored portions of the quoted language is a direct misrepresentation of the actual facts.

It may be that the fault was originally that of Smith's bankruptcy counsel, but Smith Petroleum's counsel is just as capable of reading the limited language of the Bankruptcy Court's order as this Court. That plain-language reading negates what Mem. 5 says next:

> Once this Court entered the preliminary injunction against Petroleum, Petroleum was subject to two inconsistent orders.

Again that is just wrong. Instead Smith Petroleum was subject to two orders that were not at all inconsistent: the Bankruptcy Court order requiring it to pay over its net profits to Smith and this Court's order requiring it to make the interim payments on account of the withdrawal liability. Smith Petroleum could have handled the latter obligation out of any assets other than those current net profits.[4]

---

[4]It is true that Smith opted to make the interim withdrawal payments (pursuant to Bankruptcy Court authorization), rather than their being made out of Smith Petroleum's assets apart from its upstream payment of net profits to Smith. Whether that was the product of bankruptcy counsel's mistaken analysis referred to in this opinion, or perhaps out of a desire to avoid the phenomenon known as "eating the seed corn" – perhaps avoiding any impairment of
(continued...)

Although there may well have been other misrepresentations, given the warped perspective already identified, the last one worthy of comment is one that Smith Petroleum's counsel reports (Mem. 5) as having been voiced by Smith's bankruptcy counsel when they "advised the Bankruptcy Court that they believed that the Fund had violated the automatic stay by pursuing Petroleum outside of the Bankruptcy Court." As any competent bankruptcy lawyer must know, the automatic stay simply did not apply to Smith Petroleum, which never claimed for itself the mantle of bankruptcy proceedings. It is true that the Bankruptcy Court has now issued an order that has negated withdrawal liability on Smith's part, but even on the Bankruptcy Court's own terms that order – which is not yet final and non-appealable – does not now trigger the reimbursement of installment payments made to date under the "pay now, dispute later" approach mandated by the Act.

Hence what has been said up to now suffices for the entry of summary judgment in Fund's favor in the manner requested by its prayer for relief. This Court therefore grants such judgment as a matter of law as to Smith Petroleum's liability, and it awaits Fund's prompt quantification of that liability.

There are some other questions that are not resolved by granting the requested summary judgment. One is whether the just-referred to decision of the Bankruptcy Court was within its jurisdiction and, relatedly, whether if and when that decision may become final and non-appealable it would be binding as between Smith Petroleum and Fund (perhaps under principles of defensive issue preclusion). Also relatedly, there is the question whether Smith Petroleum's

---

[4](...continued)
Smith Petroleum's ability to generate the same level of profits from its operations – that does not alter the principles stated here.

effort to avoid its withdrawal liability may be overridden by the factor of untimeliness – the unavailability of equitable tolling to cure that flaw. In those respects, this Court has not only reviewed the cases cited by the parties – principally Fund's Slotky lawsuit, 956 F.2d 1369, 1376-77 (7th Cir. 1992) – but also such decisions elsewhere as Bowers v. Transportacion Maritima Mexicana S.A., 901 F.2d 258, 263-65 (2d Cir. 1990), McDonald v. Centra, Inc., 946 F.2d 1059, 1064-65 (4th Cir. 1991) and Doherty v. Teamsters Pension Trust Fund, 16 F.3d 1386, 1393-94 & n.7 (3d Cir. 1994). But such questions remain for the future – they do not preclude the current issuance of summary judgment that has been announced here.[5]

Entered: May 2, 2006

Milton I. Shadur, United States District Judge

---

[5]This Court's April 27 order directed Fund's counsel to file, on or before May 18, the reply memo referred to earlier to address the question whether Smith Petroleum now has the ability to challenge the applicability of the Act as such (including the effect on that issue of the actions taken by Fund's counsel in the Smith bankruptcy proceedings). Although this Court did not say so at that time, if Smith Petroleum's counsel also wishes to address that question, he should do so on the same May 18 timetable.

**WHEREFORE**, Plaintiffs request that for the reasons set forth herein and in Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment and Statement of Material Facts As to Which There is No Genuine Issue, both of which are being filed contemporaneously herewith, that this Court enter summary judgment in favor of Plaintiffs and against Defendant CESPI for all past due interim payments, together with interest on the past due withdrawal liability payments, liquidated damages, and attorneys' fees and costs pursuant to the Pension Fund Trust Agreement, the Pension Plan and 29 U.S.C. § 1132(g)(2). Plaintiffs request 14 days from the date of entry of Summary Judgment to establish these amounts by affidavit.[1] In addition, Plaintiffs further request that the Court include language in its judgment order compelling the Defendant CESPI to make all future withdrawal liability payments on a timely basis.

Respectfully submitted,

/s/ Cathy L. Rath
Cathy L. Rath (ARDC #6275744)
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Pension Fund
9377 West Higgins Road
Rosemont, IL 60018
March 21, 2006 (847) 518-9800, Ext. 2343

Ex. 1 to May 2, 2006
Memorandum Opinion and Order

---

[1] Plaintiffs make this request because both the amount of delinquent interest due changes on a daily basis. Thus, the amount due will depend upon the date on which a judgment is entered in this case.